[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16189
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cv-00563-CG-B


REGINALD D. MARABLE, SR.,

Plaintiff-Appellant,

versus

MARION MILITARY INSTITUTE,
THOMAS L. TATE,
Col. individual and official capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(December 22, 2014)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Reginald Marable, an African-American male represented by counsel, appeals from the district court's grant of summary judgment in favor of Marion Military Institute, the state military college of Alabama (MMI), and Thomas L. Tate, his supervisor at MMI, in his employment discrimination suit under Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); 42 U.S.C. § 1981; and 42 U.S.C. § 1983. On appeal, Marable presents four arguments. First, he contends that the district court erred by concluding that he was judicially estopped from obtaining monetary damages from MMI due to his failure to disclose his current lawsuit in a concurrent bankruptcy proceeding. Further, he argues that the district court also erred in concluding that, with respect to obtaining non-monetary relief, he failed to establish prima facie cases of retaliation, racially discriminatory failure-to-promote, and a racially hostile work environment, all under Title VII and § 1981. For ease of reference, we will address each point in turn.

I.

We review a district court's grant of summary judgment de novo, viewing all evidence in a light most favorable to the non-moving party. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Additionally, we review the district court's application of the judicial estoppel doctrine for abuse of discretion. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284 (11th Cir. 2002).

Under the judicial estoppel doctrine, a party is precluded from asserting a claim in a proceeding that is inconsistent with a claim he took in a previous proceeding. *Id.* at 1285. The doctrine's purpose is "to prevent the perversion of the judicial process." *Id.* (internal quotation marks omitted). Application of judicial estoppel is appropriate where: (1) the allegedly inconsistent positions were made under oath in the prior proceeding; and (2) such inconsistencies have been calculated to make a mockery of the judicial system. *Id.*

The judicial estoppel doctrine is applied to situations involving intentional contradictions, not simple error or inadvertence. *Id.* at 1286. When considering the issue of judicial estoppel in the context of the omission of assets in a bankruptcy case, deliberate or intentional manipulation can be inferred from the record. *Id.* at 1287. In order for an omission to have been "inadvertent," the debtor must show either that he lacked knowledge of the undisclosed claims or that he had no motive for concealing them. *Id.*

We have held that plaintiffs who intentionally fail to disclose the existence of their employment discrimination claims in their concurrent bankruptcy petitions are judicially estopped from obtaining monetary relief on those claims. *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1292 (11th Cir. 2003) (per curiam). Specifically, we held in *De Leon* that a financial motive to conceal assets exists in

3

Chapter 13 bankruptcy proceedings, as the hiding of assets affects the amount to be discounted and repaid. *Id.* at 1291.

A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C. § 521(a)(1)(B)(i). In addition, the duty to disclose is a continuing one; thus, a debtor must amend his financial statements if circumstances change. 11 U.S.C. § 541(a)(7); *Burnes*, 291 F.3d at 1286.

In the context of an unreported employment discrimination claim for injunctive relief, as opposed to monetary damages, judicial estoppel does not apply, as injunctive relief does not add to the value of the bankruptcy estate. *Burnes*, 291 F.3d at 1288–89.

The district court did not abuse its discretion in concluding that Marable's claim for monetary damages was barred under the doctrine of judicial estoppel. Marable filed his initial discrimination charge with the Equal Employment Opportunity Commission (EEOC) in May 2010, and later filed his bankruptcy petition in February 2011. Marable omitted the fact of his EEOC charge on the bankruptcy petition. Further, when Marable filed the instant lawsuit in July 2011, he did not amend his bankruptcy petition to include the lawsuit, despite his obligation to do so. *See* 11 U.S.C. § 541(a)(7); *Burnes*, 291 F.3d at 1286. He only amended his petition to include the present lawsuit in August 2012, after the

defendants had already moved for summary judgment.  Thus, Marable had

knowledge of his EEOC charge and the instant lawsuit.  He also had a motive to

conceal his discrimination claims in his bankruptcy proceeding because, by not

listing the potential proceeds of the instant lawsuit as a potential asset, he would

ensure that any proceeds would accrue to him personally, rather than to the

bankruptcy estate.  *See De Leon*, 321 F.3d at 1291.  Accordingly, the district court

did not abuse its discretion by finding that Marable was judicially estopped from

obtaining monetary damages on his claims.  *See id.* at 1292.

As the doctrine of judicial estoppel does not bar a plaintiff from obtaining

injunctive relief, we will analyze the merits of each of Marable's claims only

insofar as he sought injunctive relief on his claims.  *See Burnes*, 291 F.3d at 1288–

89.

## II.

Title VII and 42 U.S.C. § 1981 prohibit employers from taking adverse

actions against employees in retaliation for their opposition to statutorily

prohibited racial discrimination.  *See* 42 U.S.C. § 2000e-3(a); *CBOCS West, Inc. v.

Humphries*, 553 U.S. 442, 446, 128 S. Ct. 1951, 1954–55 (2008).  Claims against

state actors under § 1981 must be brought pursuant to 42 U.S.C. § 1983.  *Bryant v.

Jones*, 575 F.3d 1281, 1288 n. 1 (11th Cir. 2009).  As Marable filed suit under both

§ 1981 and § 1983, his § 1981 claim against MMI was properly brought.

5

Similarly, while liability of an employer will lie under Title VII, the sole basis for holding Tate liable was under §§ 1981 and 1983. *See Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000) (noting that Title VII grants relief against employers, but not individual employees sued in their individual capacity); *Butts v. Cnty. of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000) (providing that § 1983 provides the sole remedy against state actors for violations of rights contained in § 1981).

In the employment context, the same substantive analysis applies to § 1981 and Title VII claims. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). Accordingly, we may analyze Marable's retaliation claim under the Title VII framework.

A plaintiff may establish a claim of retaliation by direct or circumstantial evidence, and when he only produces circumstantial evidence, a court may use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). If the plaintiff makes out a prima facie retaliation case, and the employer articulates a legitimate, non-retaliatory reason for the challenged employment action, the employee must show, by a preponderance of the evidence, that the legitimate reasons offered by the employer for taking the adverse actions were not its true reasons. *Reeves v. Sanderson Plumbing Products,*

*Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000); *see also Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (describing the burden-shifting framework for retaliation cases).

An employee cannot establish pretext by simply demonstrating facts that suggest retaliatory animus, but must specifically respond to each of the employer's explanations and rebut them. *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1309 (11th Cir. 2007). A reason is not pretextual unless it is shown both that the reason was false, and that retaliation was the real reason. *Brooks v. County Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). If "the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason" or showing that the decision was based on erroneous facts. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). Moreover, an employer is entitled to summary judgment if it had a good faith belief that the employee engaged in misconduct warranting termination. *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176–77 (11th Cir. 2000).

The district court properly granted summary judgment on Marable's retaliation claim, as he did not establish that MMI's proffered non-retaliatory reasons for his non-renewal were pretexts for retaliation. MMI identified the

7

following non-retaliatory reasons for Marable's non-renewal:  (1) Marable's hostile relationship with cadets; (2) his failure to comply with several orders and directives; (3) the personality conflict between him and Tate, his supervisor; and (4) budgetary concerns.  Thus, the burden shifted to Marable to show that each of MMI's stated reasons was false, and that the real reason for his non-renewal was retaliation.  *See Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106; *Brooks*, 446 F.3d at 1163.

The district court correctly found that Marable did not meet his burden to establish pretext.  In response to the defendants' motion for summary judgment, Marable did not submit any evidence showing that any of the stated reasons for his non-renewal were false.  *See Brooks*, 446 F.3d at 1163.  Further, while evidence did show that Tate, Marable's supervisor, had racially discriminatory animus against African-Americans, such evidence was insufficient to establish pretext. Marable was required to do more than show racial animus on the part of his supervisor to establish pretext; rather, he was also required to demonstrate that each of MMI's stated reasons for his non-renewal was false and that the real reason was retaliation, which he failed to do.  *See Crawford*, 482 F.3d at 1309; *Brooks*, 446 F.3d at 1163.  Thus, the district court correctly found that Marable did not establish pretext, and its grant of summary judgment on his retaliation claim was proper.

III.

Procedurally, when a district court's judgment is based upon multiple, independent grounds, an appellant must convince the appellate court that each enumerated ground for the judgment against him is incorrect. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). In *Sapuppo*, we noted that an appellant must clearly and specifically identify in his brief any issue he wants the appellate court to address. *Id.* If an appellant does not appropriately challenge one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge to that ground, and we affirm the district court's judgment. *Id.*

Substantively, Title VII prohibits an employer from discriminating against a person based on race. 42 U.S.C. § 2000e-2(a)(1). Similarly, 42 U.S.C. § 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The elements of a race discrimination claim under § 1981, in an employment context, are the same as a Title VII disparate treatment claim. *Rice-Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

Specifically, Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of his race. 42 U.S.C.

9

§ 2000e-2(a)(1).  An employee can prove discriminatory intent by using either direct or circumstantial evidence.  When the plaintiff relies on circumstantial evidence, as here, we apply the burden-shifting framework articulated in *McDonnell Douglas*.  *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  The plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonable jury to determine that he has satisfied the elements of his prima facie case.  *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824.

A plaintiff establishes a prima facie failure-to-promote claim by showing that: "(1) [he] is a member of a protected class; (2) [he] was qualified and applied for a promotion; (3) [he] was rejected despite [his] qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." *Wilson*, 376 F.3d at 1089.

The district court based its grant of summary judgment on Marable's racially discriminatory failure-to-promote claim on two alternative grounds:  (1) he abandoned his claim; and (2) he did not establish a prima facie case.  On appeal, Marable has not expressly challenged the district court's finding of abandonment.  Therefore, he has abandoned any challenge on appeal to the district court's abandonment finding.  *See Sapuppo*, 739 F.3d at 680.

Even assuming, arguendo, that Marable did not abandon his racially discriminatory failure-to-promote claim before the district court, and his counseled brief is deemed to implicitly challenge that finding, the district court correctly found that Marable failed to establish a prima facie case of failure-to-promote. The record shows that the Admissions Counselor position, for which Marable applied, was on the same pay scale as his prior position at MMI, and it did not carry with it additional benefits or greater responsibility. Thus, the Admissions Counselor position was not a "promotion" for Marable. *See* Webster's II New College Dictionary 885 (Houghton Mifflin 1995) (defining "promotion" as "[a]dvancement in responsibility or rank"). Accordingly, the district court correctly found that he did not establish a prima facie case of racially discriminatory failure-to-promote. *See Wilson*, 376 F.3d at 1089.

Moreover, even assuming, arguendo, that Marable did establish a prima facie case of racially discriminatory failure-to-promote, the district court's grant of summary judgment was still proper, as he failed to establish that the proffered reasons for his non-selection were pretextual. MMI identified several reasons for its selection of another candidate, Harry Howell, for the Admissions Counselor position: (1) Howell's intellect, energy, and articulate and polished manner; (2) his recruiting ideas; (3) his experience with an ROTC officer commissioning program; (4) his knowledge of social media; and (5) his ability to connect with young

11

people.  Thus, the burden shifted to Marable to show that each of the stated reasons was false, and that the real reason was race discrimination.  *See Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106.  Marable did not, however, submit any evidence showing that any of the stated reasons for Howell's selection were false, nor did he demonstrate any racially discriminatory animus on the part of MMI's President, who chose Howell for the position.  Thus, Marable did not meet his burden to show that the proffered reasons for his non-selection were pretextual.  *See Brooks*, 446 F.3d at 1163.  Accordingly, the district court's grant of summary judgment on his failure-to-promote claim was proper.

## IV.

Title VII prohibits a hostile work environment where "a series of separate acts collectively constitute one unlawful employment practice."  *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal quotation marks omitted). To establish a hostile work environment claim under Title VII, a plaintiff may show that:

> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) it was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability.

12

*Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (internal quotation marks omitted).

We have held that the requirement that the harassment be "severe or pervasive" has both an objective and a subjective component.  *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (per curiam).  In determining the objective component, the court is to consider all of the circumstances, including:  (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interfered with the employee's job performance. *McCann*, 526 F.3d at 1378.  Even if offensive, "sporadic and isolated" conduct does not support a hostile work environment claim.  *Id.* at 1379.

For example, we have concluded that, for summary judgment purposes, a racially hostile work environment may exist where evidence showed that: (1) vulgar racial graffiti frequently appeared in employee restrooms; (2) nooses were displayed at the workplace in the employee breakroom on multiple occasions; (3) several white employees wore or displayed Confederate flag paraphernalia; and (4) several white supervisors and coworkers called black employees racial slurs. *See Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1246, 1251–54 (11th Cir. 2014). On the other hand, we have held that, where the plaintiff's only evidence of harassment was the use of racially derogatory language by white coworkers over a

13

two-year period, such conduct was not "severe or pervasive" so as to create a racially hostile work environment. *See McCann*, 526 F.3d at 1378–79.

The district court correctly concluded that Marable failed to establish a prima facie case of a racially hostile work environment. The record shows that Marable identified the following alleged instances of harassment: (1) the hazing allegations and investigation to which he was subjected; (2) Tate's request that he check in upon arriving at work; and (3) Tate's racially offensive remarks. With respect to Tate's racially discriminatory comments, the district court correctly found that such isolated conduct was not sufficient to create a racially hostile work environment. *See McCann*, 526 F.3d at 1378–79. Further, Marable did not present any evidence that either the hazing allegations and subsequent investigation, or Tate's request that he check in before starting his shift, was based on his race. *See Jones*, 683 F.3d at 1292. Moreover, Marable specifically admitted that he was able to perform his job duties satisfactorily at all times during his employment with MMI. Thus, the record demonstrates that any harassment was not severe or pervasive enough to unreasonably interfere with Marable's job performance. *See Jones*, 683 F.3d at 1292; *McCann*, 526 F.3d at 1378. Accordingly, the district court properly granted summary judgment on Marable's racially hostile work environment claim.

Upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**